UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                          Case No. 14-cr-20216

v                                                Honorable Thomas L. Ludington

D-1    STEVEN J. INGERSOLL,
D-2    DEBORAH M. INGERSOLL,
D-3    GAYLE R. INGERSOLL,
D-4    ROY C. BRADLEY, SR.,
D-5    TAMMY S. BRADLEY,

        Defendants.

_____/

## ORDER DIRECTING PARTIES TO FILE TRIAL MEMORANDA AND WITNESS LISTS

Trial in this case is scheduled to begin on February 10, 2015. The final pretrial conference is scheduled for January 16, 2015. The Court has reviewed the parties' proposed jury instructions and theories of the case. After consideration of the parties' theories of the case and their proposed jury instructions, several additional requests will be made of the parties to assist the Court in understanding the parties' contentions. The Court's first draft of the proposed jury instructions—prepared after a review of the parties' proposals—will be communicated to counsel contemporaneous with the entry of this Order.

I

The Government and the Defendants will be directed to file a pretrial memorandum addressing, at least, the following matters.

                            1.        Count 1—Bank Fraud Conspiracy

The Government in its introduction to Count 1 of its proposed instructions explains the factual predicate for the charge as follows:

> Count I states that Steven J. Ingersoll and Roy C. Bradley, Sr., worked together to convince Chemical Bank to approve a construction line of credit loan. Steven J. Ingersoll, Roy C. Bradley, Sr., Gayle R. Ingersoll, Deborah M. Ingersoll, and Tammy S. Bradley then engaged in a series of transactions that diverted part of the Chemical Bank construction loan proceeds away from the construction project and to a joint, personal bank account in the name of Steven Ingersoll and Deborah Ingersoll at Fifth-Third Bank.

But the Government needs to prove that all of the Defendants conspired to commit the crime of bank fraud—"bank fraud" defined, in part, as "to act with an intent to deceive or cheat for the purpose of either causing a financial loss to another or bringing about a financial gain to oneself."  Moreover, bank fraud requires a "material misrepresentation"; that is, a misrepresentation that "has a natural tendency to influence or is capable of influencing the decision of a person of ordinary prudence and comprehension."  The Government's submitted theory of the case does not suggest any such fraud of misrepresentation on Chemical Bank. Indeed, the Government explains in its theory of the case only that Chemical Bank believed that the loan was "*supposed* to be used to convert a church building in Bay City, Michigan, into a school building." (emphasis added).

Steven Ingersoll, by contrast, agrees that not all of the loan funds disbursed by Chemical Bank were paid directly to contractors or material providers for the construction project. He agrees that "during the course of the project, money flowed as described by the government." And he suggests that sometimes he would use his own cash or that of Madison Arts LLC to pay construction expenses and that the loan disbursements simply repaid his advances and that "there was nothing illegal with any of it." He emphasizes that Chemical Bank contemplated $1.8 million being invested in the church conversion and it was in addition to Steven Ingersoll's

investment of some $400,000 for a total project cost of $2.2 million. Most importantly, he emphasizes that there was nothing illegal about his advancing funds for the project and then getting repaid. He contends, without qualification, that he was "legally entitled to use the money as he did under the terms of the loan agreement."

Therefore, in its trial memorandum, the Government should address:

(i) whether the loan agreements permitted loan proceeds being used for other purposes so long as the construction project was being funded; and

(ii) if the Government is not relying solely on the loan agreements but on some other material misrepresentation, the Government should identify the fraudulent conduct.

### 2. Count 2—Conspiracy to Defraud the United States

The Government's explanation of the facts relevant to Count 2 beings almost exactly like its explanation of the facts relevant to Count 1 by asserting that Steven Ingersoll, Roy Bradley, and Gayle Ingersoll "conducted a series of financial transactions to conceal that part of the proceeds of a construction loan were diverted away from the construction project . . . ." The Government's focus then turns to the funds received by Steven Ingersoll and suggests that they constituted taxable income that he did not report on his IRS return. And it is further alleged that Roy Bradley and Tammy Bradley (who is not charged in this Count) failed, in the operation of their independently owned construction company, to report to the IRS the wages that they paid to laborers.

Steven Ingersoll makes no response to the Government's accusation except to acknowledge that while the "money flowed as described by the government there was no conspiracy to defraud" the United States. The suggestion, seemingly, is that while cash may

have "flowed" between parties and entities based on short-term liquidity needs, once the short-term transactions were settled or netted, there was no reportable income.

But there is no explanation of what the liquidity problems were that would justify the immediate use of (substantial) funds from the bank loan for Steven Ingersoll's personal use. Nor is there an explanation of when or how offsetting transactions occurred to support his assertion that "every penny of the $1.8 million borrowed from Chemical Bank went into the project," despite his apparent acknowledgment of receiving loan disbursements deposited to his personal account.

Gayle Ingersoll's theory of defense also fails to address the acknowledged "money flows" at all and simply asserts "he did not intend to defraud the government and he relied on the advice of his accountant who prepared his tax returns." Gayle Ingersoll's accountant, however, did not conduct the transactions. For example, according to the Government, Steven Ingersoll wired $704,000 to Roy Bradley's construction firm, Tamm Bradley then wired the same amount to Gayle Ingersoll, who then wired the same amount to Steven Ingersoll. Gayle Ingersoll's accountant might have had a role in how the transaction was reported, but not—to the Court's understanding—in initiating the transaction.

Likewise, Roy Bradley's does not address Steven Ingersoll's "money flows" acknowledgment and only states that "he did not intend to defraud the government."

Therefore, in its trial memorandum, the Government should:

(i) more fully explain the assertion that Gayle Ingersoll falsely reported $934,000.00 of payments to subcontractors that was in fact paid to Steven Ingersoll;

(ii) explain the crimes or actions that each Defendant allegedly committed in support of the tax evasion conspiracy charged in Count 2.

In his trial memorandum, Defendant Steven Ingersoll should address:

(i) the alleged economic purpose, such as his apparent need for cash, for the transactions outlined in the Superseding Indictment;

(ii) the alleged legal justification, if any, for the proposition that the short-term "money flows" were not taxable income to him.

In his trial memorandum, Gayle Ingersoll should address:

(i) the alleged economic purpose, if any, of the transactions outlined in the Superseding Indictment.

In his trial memorandum, Roy Bradley should address:

(i) the alleged economic purpose, if any, of the transactions outlined in the Superseding Indictment.

3. Counts 3, 4, and 5—Wire Fraud

The Government outlines three specific $704,000 transactions that occurred on two days in June of 2011 involving Roy Bradley, Tammy Bradley, Gayle Ingersoll, and Steven Ingersoll. The Government must prove, however, that the Defendants engaged in the transactions as part of a scheme to defraud in order to obtain financial gain or cause a financial loss to another. The Government's theory of the case does not address this factual element.

With respect to these counts, the Government should address:

(i) the nature of the scheme involving a concealment of material fact concerning each of the three transactions.

Steven Ingersoll, Gayle Ingersoll, and Tammy Bradley should address:

(i) the alleged economic purpose, if any, of the transactions.

4. Counts 6 and 7—Tax Evasion

In Counts 6 and 7 the Government alleges that Steven Ingersoll attempted to evade and defeat the payment of income taxes in 2009 and 2010. The transactions at issue involve advances made to Steven Ingersoll from his solely-owned corporations, Smart Schools Management and Smart Schools Incorporated. *See* Bill of Particulars Ex. 2 & 3, ECF No. 61.

Steven Ingersoll asserts that his receipt of these advances should be characterized as loans, which are non-taxable income. In contrast, the Government previously represented that the payments could not have been loans under state law, which allegedly prohibits charter school funds from being loaned to third parties. However, the Government did not allude to this argument in either its proposed jury instructions or in its theory of the case.

In its trial memorandum, the Government should address:

(i)  the allegation that state law prohibits Smart Schools Management and Smart Schools Incorporated from making loans to Steven Ingersoll; and

(ii) how this state law affects the draft jury instructions and the counts charged in the Superseding Indictment, if at all.

In his trial memorandum, Steven Ingersoll should address:

(i)  the economic purpose, if any, for Steven Ingersoll obtaining loans from Smart Schools Incorporated and Smart Schools Management;

(ii) the economic purpose, if any, for Smart Schools Incorporated and Smart schools Management providing the loans to Steven Ingersoll; and

(iii) any of the other factors listed in *Roth Steel Tube Co. v. C.I.R.*, 800 F.2d 625 (6th Cir. 1986) or in the draft jury instructions for these Counts that may be relevant to determining the characterization of the advances made to Steven Ingersoll.

## II

In addition to providing trial memoranda, the parties will also be directed to file witness lists which identify the witnesses to be called and a brief summary of the relevance of their testimony. The parties should include estimates of the length of time direct examination of each listed witness will take. These witness lists will enable the Court to estimate the time necessary to try the case.

The parties should be prepared to discuss logistical and procedural concerns at the final pretrial conference on January 16, 2015. Some issues that will be addressed at that time include:

- the number of peremptory strikes permitted for each party;
- the number of alternate jurors to be chosen;
- the method for choosing alternate jurors;
- trial schedule and logistics; and
- courtroom setup, including audio/visual equipment needs.

### III

Accordingly, it is **ORDERED** that the Government, Steven Ingersoll, Gayle Ingersoll, Roy Bradley and Tammy Bradley are **DIRECTED** to file trial memoranda addressing the issues as outlined above on or before **January 15, 2015**. In addition, all parties are invited to address any issues they believe would clarify the issues and would be helpful to the Court's understanding of the case.

It is further **ORDERED** that the Government is **DIRECTED** to file its witness list with summaries of testimony and estimated times for direct examination on or before **January 15, 2015**.

- 8 -

It is further **ORDERED** that each Defendant is **DIRECTED** to file his or her witness list with summaries of testimony and estimated times for direct examination on or before **January 16, 2015.**

                                              s/Thomas L. Ludington  
                                              THOMAS L. LUDINGTON  
                                              United States District Judge

Dated: January 8, 2015

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 8, 2015.

                                    s/Tracy A. Jacobs  
                                    TRACY A. JACOBS