UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

STEVEN J. INGERSOLL,

    *Petitioner*

v.

UNITED STATES OF AMERICA,

    *Respondent.*
_____/

CRIM. CASE NO: 1:14-cr-20216
CIV. CASE NO.: 1:17-cv-10270
DISTRICT JUDGE THOMAS L. LUDINGTON
MAGISTRATE JUDGE PATRICIA T. MORRIS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON PETITIONER'S 28 U.S.C. § 2255 MOTION
TO VACATE, SET ASIDE, OR CORRECT SENTENCE (Doc. 352)**

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Petitioner's motion to vacate (Doc. 352) be **DENIED.**

**II.   REPORT**

    **A.    Introduction**

Petitioner was originally charged on April 11, 2014. (Doc. 3.) On April 23, 2014, a superseding indictment was filed, charging Petitioner with conspiracy to defraud a financial institution in violation of 18 U.S.C. §1349 (Count 1), conspiracy to defraud the United States and the Internal Revenue Service of the Department of Treasury in violation of 18 U.S.C. § 371 (Count 2), wire fraud (electronic funds transfer of $704,000 of construction loan proceeds from the Madison Arts account to Roy and Tammy Bradley's construction company's account) in violation of 18 U.S.C. § 1343 (Count 3), wire fraud (electronic funds transfer of $704,000 of construction loan proceeds from Roy and Tammy Bradley's construction company account to Gayle Ingersoll's business account) in violation of 18 U.S.C. § 1343 (Count 4), wire fraud (electronic funds transfer

of $704,000 of construction loan proceeds from Gayle Ingersoll's business account to Petitioner's personal bank account) in violation of 18 U.S.C. § 1343 (Count 5), tax evasion for the 2009 calendar year in violation of 26 U.S.C. § 7201 (Count 6), and tax evasion for the calendar year 2010 in violation of 26 U.S.C. § 7201 (Count 7). (Doc. 24.)

Petitioner was convicted on Counts 2, 6 and 7 via jury trial held from February 10 through February 17, 2015, and February 25 through February 27, 2015, and March 3 through March 10, 2015. (Doc. 154.) Petitioner was represented by Jan Geht (of Bowerman, Bowden, Ford, Clulo & Luyt, PC) and Martin Crandall (of Clark Hill). (See, e.g., Doc. 187.) Mr. Geht was lead counsel on tax-related offenses because he is a Certified Public Accountant ("CPA") and former Department of Justice tax Division Attorney; while Mr. Crandall was lead counsel regarding the bank and wire fraud charges. (Doc. 190 at 1801-02, Doc. 366 at ID 7065, Crandall Aff. at 1, 3.) Count 1 was dismissed by the Court (Doc. 152) and the jury found Petitioner not guilty on Counts 3, 4, and 5. (*Id.*) Sentencing hearings were held on October 20, October 21, October 22, 2015, December 8 and December 10, 2015. Further sentencing hearings were held on January 5, January 7, January 26, January 27, January 28, February 23, February 24, July 11, July 12, and December 15, 2016. Judgment entered on December 21, 2016, sentencing Petitioner to 41 months on Counts 2, 6, and 7, to be served concurrently. (Doc. 349 at 2.)

On January 24, 2017, Petitioner filed the instant *pro se* motion to vacate sentence. (Doc. 352.) The motion was referred to the undersigned (Doc. 365,) the government responded (Doc. 366,) and Petitioner replied. (Doc. 372.)

### B. Law and Analysis

#### 1. 2255 and ineffective assistance of counsel standards

To prevail on a § 2255 motion "'a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are generally outside the scope of section 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A movant can prevail on a section 2255 motion alleging non-constitutional error only by establishing a "'fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process.'" *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotation marks omitted)).

Claims of ineffective assistance of counsel are governed by the U.S. Supreme Court's rule pronounced in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In *Strickland*, the Court enunciated a two-pronged test that must be satisfied to prevail on an ineffective assistance of counsel claim. First, the movant must show that counsel's performance was deficient in that it fell below an objective standard of reasonableness. *Id.* at 688. "Constitutionally effective counsel must develop trial strategy in the true sense – not what bears a false label of 'strategy' – based on what investigation reveals witnesses will actually testify to, not based on what counsel guesses they might say in the absence of a full investigation." *Ramonez v. Berghuis*, 490 F.3d 482, 488 (6th Cir. 2007). Second, the movant must show that he was prejudiced by the deficiency to such an extent that the result of the proceeding is unreliable.

3

*Strickland*, 466 U.S. at 688. It is not enough to show that the alleged error "had some conceivable effect on the outcome of the proceeding." *Id.* Rather, the movant must show that, but for counsel's errors, the result would have been favorably different. *Id*. at 693. Failure to make the required showing under either prong of the *Strickland* test defeats the claim. *Id*. at 700.

The Supreme Court has explained that "[t]he essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986). This language highlights the Supreme Court's consistent view that the Sixth Amendment right to counsel is a safeguard to ensure fairness in the trial process.

In *Lockhart v. Fretwell*, 506 U.S. 364, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993), the Court clarified the meaning of "prejudice" under the *Strickland* standard, explaining:

> Under our decisions, a criminal defendant alleging prejudice must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." . . . Thus, an analysis focusing solely on the mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective.

*Lockhart*, 506 U.S. at 369 (citations omitted).

Ineffective assistance of counsel claims "may be brought in a collateral proceeding under § 2255 whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003).

### 2.    **Application and analysis**

Petitioner argues that counsel was ineffective for: "(1) inadequate cross examination [of Mr. Hackett]; (2) depriving the jury of expert tax accounting testimony promised in opening statement;

4

(3) negligently advising Ingersoll to exercise his 5th Amendment privilege; [and] (4) failing to provide cogent closing arguments." (Doc. 352 at ID 6897.) Petitioner further argues that "[e]liminating the testimony of Ingersoll and Hammel left gaping holes in the defense leading to conviction" and that "[e]ven if advice not to testify were deemed justifiably strategic, Mr. Crandall's failure to deliver a cogent closing argument, which Ingersoll relied [on] in deciding not to testify, ensured conviction." (*Id.*)

As noted by the government, Petitioner's two attorneys, Mr. Crandall and Mr. Geht, divided the workload according to their expertise, i.e., Mr. Geht generally performed cross examination of government witnesses regarding the tax charges (IRS agent Wisniewski, IRS Special Agent Russo, CPA Taylor, CPA Camiller, CPA Clawson, Ms. Wilson who testified re tax credits, and Ms. Harrington who was employed by H&R Block). (Doc. 366 at ID 7065.) On the other hand, Mr. Crandall cross-examined Mrs. Walbecq and Scherret who worked as laborers on the project and representatives of Chemical Bank (Mrs. Kienbaum and VanWert). (*Id.*) Petitioner does not dispute this characterization of the roles his defense attorneys played.

The government then notes the irony in Petitioner's claim that Mr. Crandall was ineffective since Petitioner was acquitted on the charges over which Mr. Crandall had primary responsibility, i.e., the bank and wire-fraud charges. (*Id.* at ID 7065-66.) Since Petitioner was acquitted on the charges handled by Mr. Crandall, it is impossible for Petitioner to meet his burden to show that but for Mr. Crandall's alleged errors, the result would have been favorably different. *Strickland*, 466 U.S. at 693. The result could not have been favorably different since it was as favorable as possible as to the bank and wire fraud charges, i.e., Counts 1, 3, 4, and 5.

As to the claim that Mr. Crandall was ineffective in his cross examination of Ms. Hackett, government counsel and the court told the jury that Mr. "Hackett's testimony had application only to the charge in count I of the indictment" which was dismissed by the court during trial. (Doc. 366 at ID 7073, Doc. 203 at 2507-08, Doc. 152.) The government continues that if Ms. "Hackett's testimony was critical regarding the tax charges [that he was convicted on]...one would have expected Mr. Geht to do the cross-examination of that witness, not Mr. Crandall." (Doc. 366 at ID 7073.) Since the jury was told it could only consider Ms. Hackett's testimony as to a count that Petitioner was acquitted on, i.e., Count 1, it is also impossible for Petitioner to meet his burden to show prejudice as to this argument.

Petitioner replies that Mr. Crandall's failure influenced his conviction on Count 2. Petitioner argues that Mr. Crandall failed to " emphasize that both witnesses [Walbecq and Scherrett] denied Ingersoll's involvement in their pay and that Ms. Parker presented no evidence that Ingersoll had any awareness or involvement in Bradley's payroll practices" and that "Crandall failed to point out to the jury the complete lack of evidence linking Ingersoll to Bradley's payroll violations, the only basis for a conspiracy conviction after Count 1 was dismissed. Crandall's failure left the only remaining possibility of a Count 2 [conspiracy to defraud the IRS] conviction unaddressed." (Doc. 372 at ID 7110-11.)

Review of the transcript, however, reveals that Mr. Crandall did emphasize the lack of evidence connecting Petitioner to the Bradleys' payroll practices. On direct examination, Mr. Walbecq testified that he was paid in cash for his work on the Bay City Academy project, that he was paid by Tammy Bradley, never received a W-2, that he never saw Roy Bradley pay anyone, but that he did see a cash transaction where Roy Bradley gave Dr. Ingersoll cash in a bank bag, and

6

then he saw Dr. Ingersoll put the bank bag in the pocket of his coat. (Doc. 149 at ID 1173-74.) Direct examination consisted of 8 pages. On cross-examination, Mr Crandall elicited that Mr. Walbecq was a friend of Roy Richard and that Mr. Walbecq's information about money passing from Roy Bradley to Dr. Ingersoll "might have come from Roy Richard's discussions with [Mr. Walbecq]" rather than being something he witnessed. (Doc. 149 at ID 1190.) This cross-examination targeted the main point made by Mr. Walbecq that connected Petitioner to Roy and/or Tammy Bradley's payroll practices and it deflated the credibility of such testimony by pointing out that Mr. Walbecq may not have based his testimony on an event he saw but perhaps was only repeating a story he had heard from Mr. Richard. This was effective cross-examination that emphasized the lack of direct evidence. In addition, in his closing, Mr. Crandall once again challenged the testimony of Mr. Walbecq. (Doc. 175 at ID 1351-53.) Accordingly, Mr. Crandall cannot be found to have been ineffective in his performance on this ground. *Krist v. Foltz*, 804 F.2d 944, 948-49)(6th Cir. 1986)(counsel not ineffective where he carefully cross-examined witness and referred to problems in witness testimony in his closing argument).

As to Petitioner's decision not to testify, Mr. Crandall's affidavit establishes that he and Petitioner discussed the possibility of Petitioner testifying, Mr. Crandall "opined on some of the dangers inherent to that process" but "it was made clear to him that it was his decision. Ingersoll made the decision not to testify." Mr. Crandall also clarified that he "surely did not predict winning the case with or without Mr. Ingersoll's testimony." (Doc. 366 at ID 7082-82.) Under these circumstances, counsel cannot be considered ineffective and even if he could, Petitioner has not sufficiently alleged any prejudice. *Cummings v. Rapelje*, No. 11-10003, 2016 WL 4191733, at *9 (E.D. Mich. 2016)(counsel not ineffective where record indicated defendant discussed pros and

7

cons with his attorney and prejudice not shown where defendant did not produce details about substance of his testimony and merely speculated his testimony would have had an impact on the jury's view of certain witnesses' credibility).

As to Mr. Crandall's opening statement promise to provide expert tax accounting testimony, the opening did not contain any such promise. Mr. Crandall stated that the "flow of money is looked at every year by the auditors, by the board of directors from the Grand Traverse Academy, by the Lake Superior State auditor, the chartering school, by the state of Michigan, Department of education. They look at it, they opine and never was there a problem until the IRS came to town and said they stole that money. And the auditors you're going to see testify, some of the them are going to say, no, they didn't. And then some of them are going to say, whoa, this is the IRS, they got power. They're going to say, you might be right..." (Doc. 148 at ID 1116.) Mr. Crandall was not promising to produce auditors who would testify to particularized findings or conclusions; instead, he was indicating the auditors may have various opinions on whether the conduct was problematic. Mr. Crandall also referred to a "page from an accountant that we had, a forensic accountant" and asked them to "take a look at these records..." (Doc. 148 at ID 1118.) However, the government objected to Mr. Crandall's stated timing of when this document was shown to the government, then almost immediately, the government objected to Mr. Crandall's reference to the success of previous school projects, that objection was overruled, and Mr. Crandall went on to talk about the other projects. (Doc. 148 at ID 1119-22.) This brief reference did not a promise make and any reference was likely lost in the mire of objections and discussions about other school projects. Consequently, Petitioner cannot meet his burden to allege any prejudice based on this issue.

Petitioner focuses on the failure to call Mr. Hammel, an expert in forensic accounting, as promised in the opening statement; however, Mr. Hammel was never mentioned in the opening statement. To the extent that Petitioner also criticizes the decision not to call Mr. Hammel, Mr. Crandall's affidavit indicates that "Mr. Hammel was certainly ready, willing and able to testify both in the trial of this matter and in the post-trial proceedings when he was subpoenaed to testify, but it was the Defendant's and/or Mr. Geht's decision, not my decision, not to call Mr. Hammel as a witness." (Doc. 366 at ID 7083.)

Since there were no significant promises made in Mr. Crandall's opening, and no mention of, let alone promise to call, Mr. Hammel, there can be no ineffectiveness stemming from any lack of fulfillment of a non-existent promise. Even if there were any ineffective assistance as to the decision not to call Mr. Hammel, Mr. Crandall was not the attorney on that topic and cannot be held responsible for it. Finally, no sufficient allegations of prejudice from any of these issues has been made.

As to Petitioner's argument that Mr. Crandall's closing did not match his opening, there is no such requirement. Effective attorneys address the evidence produced at trial in their closing arguments, as Mr. Crandall did. Even if Mr. Crandall's closing argument was not the most eloquent argument ever made, it did not have to be. A review of the transcript shows that it was well within acceptable standards.

Petitioner also makes a brief reference to Mr. Geht's "fail[ure] to elicit the fact that the tax credit proceeds about which Ms. Wilson testified were used to repay the shareholder loans that was the central tax question of the trial." (Doc. 372 at ID 7111.) This brief reference in a reply, however, is insufficient to invoke a new claim of ineffective assistance of counsel against Mr.

9

Geht. *See, Kuhn v. Washtenaw County*, 709 F.3d 612, 624 (6th Cir. 2013)(argument waived if not raised in initial brief in support of motion); *Golden Living Center-Frankfort v. Sec'y of Health and Human Servs*., 656 F.3d 421, 429 (6th Cir. 2011), *citing Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010)(arguments raised for the first time in a reply brief are waived).

Finally, Petitioner complains that Mr. Crandall behaved unethically when he loaned Petitioner $86,000 and threatened to withdraw from the case if he was not paid. Mr. Crandall's affidavit acknowledges the "bridge loan," but indicates that he did not contemplate or threaten to withdraw. (Doc. 366 at ID 7080.) Whether that loan was proper or improper does not affect whether Mr. Crandall's performance at trial met an objective standard of reasonableness and has no relation to this motion. In addition, even assuming, *arguendo*, that threats were made, counsel did not move to withdraw during trial; thus, Petitioner did not suffer any prejudice.

### C. Evidentiary Hearing

Section 2255 states that

> [u]nless the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255(b). The Sixth Circuit has "observed that a Section 2255 petitioner's burden for establishing an entitlement to an evidentiary hearing is relatively light." *Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003) (citation omitted). "In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007).

On the other hand, no hearing is required if the motion's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than

10

statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citation omitted). Additionally,

> The words 'grant a prompt hearing' are not magic words requiring a district judge, who is fully familiar with the circumstances under which a guilty plea was made, to duplicate procedures and conduct a hearing to resolve alleged fact issues which can and should be decided on the record that already exists.

*United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993).

In the instant case, there is no material factual dispute that a hearing could address. I therefore suggest that Petitioner is not entitled to a hearing on the allegations raised in his motion.

### D. Conclusion

I recommend that the Court deny Petitioner's motion because he fails to show that counsel's conduct fell below an objective standard of reasonableness and he fails to allege prejudice supporting his ineffective assistance of counsel argument.

## III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  July 17, 2017                         S/ PATRICIA T. MORRIS
                                             Patricia T. Morris
                                             United States Magistrate Judge

**CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.  A copy was also sent via First Class Mail to Steven J. Ingersoll #49952-039 at Duluth Federal Prison Camp, Inmate Mail/Parcels, P.O. Box 1000, Duluth, MN 55814.

Date: July 17, 2017                          By s/Kristen Castaneda
                                             Case Manager